**NO. 22-2014**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

KEITH WHITE,
*Defendant-Appellant.*

---

On Appeal from the United States District Court
For the Southern District of Indiana, Indianapolis Division
District Case No. 1:17-cr-00135-SEB-TEB
Sarah Evans Barker, District Court Judge

---

**BRIEF AND REQUIRED SHORT APPENDIX
OF APPELLANT KEITH WHITE**

---

Terry Tolliver, #22556-49
BRATTAIN MINNIX TOLLIVER
One Indiana Square, Suite #2625
Indianapolis, Indiana 46204
(317) 231-1750
(317) 231-1760 fax
Terry@BMGIndy.com
Attorney for Defendant-Appellant,
Keith White

<u>DISCLOSURE STATEMENT</u>

The undersigned, counsel for Keith White, furnishes the following in compliance with Circuit Rule 26.1:

1. The full name of every party that the attorney represents in the case: Keith White

2. The name of all law firms whose partners or associates have appeared for the party in the case or are expected to appear for the party in this Court:

    Terry Tolliver with Brattain Minnix Tolliver

3. If the party or amicus is a corporation: not applicable.


Dated: <u>July 18, 2022</u>                    <u>/s/ Terry Tolliver</u>
                                               Terry Tolliver


Please indicate if you are counsel of record for the above listed parties pursuant to Circuit Rule 3(d). Yes <u>X</u>   No


Address: Brattain Minnix Tolliver, One Indiana Square, Suite #2625, Indianapolis, Indiana 46204
        Phone Number: (317) 231-1750; Fax Number (317) 231-1760; Email Address: terry@bmgindy.com

                                        Date:   <u>July 18, 2022</u>

# **TABLE OF CONTENTS**

Page

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯ii

TABLE OF CONTENTS ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯iii

TABLE OF AUTHORITIES ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯v

APPELLANT'S JURISDICTIONAL STATEMENT ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ⋯⋯⋯⋯⋯⋯⋯2

STATEMENT OF THE CASE ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯3
    A. Mr. White is arrested and indicted ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯3
    B. Mr. White is convicted and appeals his sentence ⋯⋯⋯⋯⋯⋯3
    C. Mr. White is resentenced and appeals ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯3

SUMMARY OF ARGUMENT ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯4

ARGUMENT ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯5
    I.    The U.S.S.C. is not legally permitted to include inchoate drug offenses in their definition of "controlled substance offenses" for the purposes of career offender status because there is no "clear congressional authorization" to do so as required by *West Virginia* ⋯⋯⋯⋯⋯⋯⋯ 5

    II.    Alternatively, Mr. White is not a creer offender because the language of §4B1.2(b) does not include inchoate crimes making the sentencing commission's addition of them in the Application Note 1 an impressiible substantive modification of the Guidelines ⋯⋯⋯⋯⋯⋯⋯ 7

        A. Under *Kisor*, Mr. White is not a creer offender because the plain language of §4B1.2 is unambiguous and does not include inchoate offenses in its definition of controlled substance offenses ⋯⋯⋯⋯⋯⋯⋯ 8

        B. Even if §4B1.2 is ambiguous, Application Note 1's inclusion of inchoate crimes should not controlled because it is outside the bounds of reasonable interpretation after applying statutory analyisis required by *Kisor* ⋯⋯⋯⋯⋯⋯⋯ 9

        C. Even if Application Note 1 is a reasonable interpretation, it should not be controlling because it does not reflect the sentencing commission's substantive expertise, or a fair and considered judgment ⋯⋯⋯⋯⋯⋯⋯ 10

        D. This Court should overturn its precedent interpreting guideline §4B1.2(b) to include inchoate crimes because this precedent fails to apply *Kisor's* intepretive methadology ⋯⋯⋯ 12

CONCLUSION ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯14

CERTIFICATE OF COMPLIANCE ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯15

CERTIFICATE OF SERVICE ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯16

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                    <u>Page</u>

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) ............................................................... *passim*

*Stinson v. United States*, 508 U.S. 36 (1993) ...................................................... *passim*

*United States v. Adams*, 934 F.3d 720 (7th Cir. 2019) ........................................5

*United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022) ...................................12

*United States v. Havis*, 927 F.3d (6th Cir. 2019) ..............................................12

*United States v. Nasir*, 17 F.4th 459 (3rd Cir. 2021) ........................................10

*United States v. Smith*, 989 F.3d 575 (7th Cir. 2021) ........................................13

*United States. v. Tate*, 822 F.3d 370, 375 (7th Cir. 2016) ..................................5

*United States v. Winstead*, 890 F.3d 1082 (D.C. Cir. 2018) ...............................10

*West Virginia v. Environmental Protection Agency*, 142 S.Ct. 2587 (2022) ...........5-6

<u>Statutes</u>

21 U.S.C. § 846 ..................................................................................................4, 7

21 U.S.C. § 991 ..................................................................................................4, 6

21 U.S.C. § 994 .................................................................................................4, 6-7

28 U.S.C. § 1291 ....................................................................................................1

28 U.S.C. § 1294 ....................................................................................................1

28 U.S.C. § 2255 .................................................................................................1, 3

<u>Other Authorities</u>

Circuit Rule 26.1 ....................................................................................................ii

Circuit Rule 32 .....................................................................................................15

F. R. App. P. 32 ...................................................................................................15

F. R. App. P. 4 .......................................................................................................1

U.S. Sentencing Comm'n, *Fifteen Years of Guidelines Sentencing, An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 134 (2004) ...................................................................................................................11

U.S. Sentencing Comm'n, *Rulemaking Amendment Process* (2016) ...........................11

U.S.S.G. §4B1.2 ...............................................................................................*passim*

## APPELLANT'S JURISDICTIONAL STATEMENT

The Defendant-Appellant, Keith White, presents a direct appeal to his federal criminal sentencing.

**District Court Jurisdiction**. On February 5, 2019, Mr. White was sentenced to 144 months incarceration in the Southern District of Indiana for Conspiracy to Distribute more than 100 grams of heroin. On July 5, 2019, Mr. White filed a motion to vacate his sentence under 28 U.S.C. § 2255 because of inadequate counsel. On May 18, 2021, the District Court granted Mr. White's motion to vacate pursuant to 28 U.S.C. § 2255. The same day Mr. White filed a notice of appeal and on August 27, 2021, a Joint Motion to Remand was filed with the United States Court of Appeals (USCA). On August 30, 2021, the USCA granted the joint motion and Mr. White's sentence was vacated and remanded for resentencing. The District Court had jurisdiction under 28 U.S.C. § 2255.

**Court of Appeals Jurisdiction**.  This Court has jurisdiction under 28 U.S.C. §§ 1291 and 1294(1). On May 25, 2022, the District Court filed their amended judgment. Under Fed. R. App. Proc. Rule 4, "the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from." Mr. White timely filed his Notice of Appeal on June 7, 2022.

## STATEMENT OF ISSUE PRESENTED FOR REVIEW

I.      Whether the Sentencing Commission has clear congressional authorization to include inchoate drug offenses as crimes which can trigger career offender status?

II.     Whether the district court erred in relying on Mr. White's instant conviction for an inchoate drug offense to designate him as a career offender when calculating his base sentencing range?

## STATEMENT OF THE CASE

**A.     Mr. White is arrested and indicted.**

Beginning in or about 2014, Mr. White began a conspiracy to distribute heroin along with fellow in-mate, Elonzo Williams. On July 18, 2017, Mr. White and his co-defendants were indicted for their alleged conspiracy. On August 21, 2017, Mr. White was arrested and charged with one charge of conspiracy to possess with intent to distribute 100 grams or more of a substance containing a detectable amount of heroin. Mr. White and the government enter into a plea agreement on September 17, 2018. The parties did not agree on a specific sentence, but the government agreed to recommend a sentence within the advisory range as determined by the Court.

**B.     Mr. White is convicted and appeals his initial sentence**

. Mr. White was ultimately convicted of his single conspiracy count on February 5, 2019, to 144 months in prison. On July 5, 2019, Mr. White filed a motion to vacate his sentence pursuant to 28 U.S.C § 2255. On May 18, 2021, the Court granted the defendant's motion to vacate for relief pursuant to 28 U.S.C. § 2255 to the extent that Mr. White could appeal the conviction and sentence in his case. On August 17, 2021, Mr. White and the government filed a joint motion to remand with this Court. On august 30, 2021 this Court vacated Mr. White's sentence and remanded his case for resentencing.

**C.     Mr. White is resentenced and appeals**

On May 16, 2022, Mr. White had a second sentencing hearing. Mr. White had his sentence reduced from 144 months to 120 months due to several 18 U.S.C. 3553(a) factors. However, the district court still sentenced him as a career offender greatly enhancing his guideline range. The dispositive issue in this appeal is whether the district court erred in sentencing Mr. White as a career offender.

## SUMMARY OF ARGUMENT

The Sentencing Commission may not legally include an offense under 21 U.S.C. § 846 in their U.S.S.G. § 4B1.2 definition of "controlled substance offenses" for the purposes of sentencing defendants as career offender's because there is no "clear congressional authorization" allowing the Commission to do so. The Sentencing Commission's charter is found in 28 U.S.C. § 991 while the Commission's affirmative duties are found in 28 U.S.C. § 994. While § 994(h) indicates that the Sentencing Commission has the authority to create the career offender guidelines, there is nothing in § 994(h) indicating that convictions under 21 U.S.C. § 846 may serve as an instant offense to convict a defendant as a career offender.

The District Court should not have sentenced Mr. White as a career offender. According to U.S.S.G. §4B1.1(a), to be designated as a career offender a defendant must have two predicate felony offenses that are either violent crimes, or controlled substance offenses. Additionally, the instant offense must either be a "crime of violence" or a "controlled substance offense." Moreover, U.S.S.G. §4B1.2(b), which defines what a "controlled substance offense" is, does not include inchoate offenses. Mr. White was convicted of an inchoate offense, which does not count as a controlled substance offense for the purposes of the sentencing guidelines career offender designation. Therefore, the District Court erred when they determined that Mr. White's baseline sentencing guideline range was 188-235.

**ARGUMENT**

Standard of Review

When reviewing questions of law, the standard of review is *de novo*. *United States. v. Tate*, 822 F.3d 370, 375 (7th Cir. 2016). Claims, such as Mr. White's, of a "procedural error[] in sentencing, . . . such as whether a prior conviction counts as a 'controlled substance offense'" are questions of law which are therefore subject to *de novo* review. *United States v. Adams*, 934 F.3d 720 (7th Cir. 2019).

I.    **The U.S.S.C. is not legally permitted to include inchoate drug offenses in their definition of "controlled substance offenses" for the purposes of career offender status because there is no "clear congressional authorization" to do so as required by *West Virginia*.**

At the outset we note that Supreme Court precedent on executive agencies has been incorporated into analysis of the Sentencing Commission's Guideline's by *Stinson v. United States*, 508 U.S. 36, 45 (1993). This makes the Supreme Court's decision in *West Virginia v. Environmental Protection Agency*, 142 S.Ct. 2587 (2022) controlling. In *West Virginia* the Court held that agencies must point to "clear congressional authorization" when exercising power. *Id.* at 2609. The *West Virginia* Court specifically addressed whether Congressional authorization in the Clean Air Act allowing the EPA to determine the "best system of emission reduction . . . which has been adequately demonstrated" allowed the EPA to require coal-fired power plants to reduce their own production of electricity. *Id.* at 2600. The Court reasoned that certain, highly consequential, administrative assertions of authority provide "reason to hesitate before concluding that Congress" intended to confer the authority an agency is asserting that it has. *Id.* at 2607. The Court, therefore, reversed the appellate court's decision and remanded the case for proceedings consistent with its decision. *Id.* at 2616.

5

The two broad purposes of the Sentencing Commission are found in 28 U.S.C. § 991(b) and are to:

(1)     establish sentencing policies and practices for the Federal criminal justice system that–

     (A)     assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code;

     (B)     provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices; and

     (C)     reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process; and

(2)     develop means of measuring the degree to which the sentencing, penal, and correctional practices are effective in meeting the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code.

Under the *West Virginia* Court's directive that administrative agencies cannot exercise authority absent "clear congressional authorization" the broad purposes enumerated here would not be sufficient to allow the Sentencing Commission to create Career Offender Guidelines.

The specific duties of the Sentencing Commission are found in 28 U.S.C. § 994. While § 994(h) does give "clear congressional authorization" for the Sentencing Commission to create a Career Offender guideline, § 994(h)(1) requires that to sentence the defendant as career offender, their instant conviction must be:

     (A)     a crime of violence; or

     (B)     an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and chapter 705 of title 46.

6

The fact that of the offenses enumerated in subsection B do not include offenses under 21 U.S.C. § 846 indicates that the Sentencing Commission lacks "clear congressional authorization" to subject defendants convicted of violating § 846 to Career Offender status. Therefore, the Defendant's instant conviction does not support the district court's decision to sentence him as a career offender.

**II.     Alternatively, Mr. White is not a career offender because the language of §4B1.2(b) does not include inchoate crimes making the sentencing commission's addition of them in the application note 1 an impermissible substantive modification of the Sentencing Guidelines under *Kisor*, and *Stinson*.**

In *Kisor* Court's opinion proceeded by discussing a long-standing doctrine of administrative law referred to as *Auer* deference. *Kisor v. Wilkie*, 139 S.Ct. 2400, 2410-2414 (2019). The premise of *Auer* deference is that when a court is tasked with interpreting ambiguous administrative rules, the court should defer to the agency's interpretation of those guidelines "unless it is plainly erroneous or inconsistent with the regulation." *Id*. at 2412. The Court acknowledged that this formulation of the *Auer* doctrine "may suggest a caricature of the doctrine, in which deference is 'reflexive.'" *Id*. at 2415. The Court indicated that they granted *certiorari* to remedy this reflexive deference that courts have increasingly given agency's interpretations of their regulations by "reinforcing some of the limits inherent in the *Auer* doctrine." *Id*. In other words the purpose of *Kisor* is to encourage courts to actively engage in statutory construction of administrative rules rather than to defer to administrative agencies interpretations of their guidelines whenever there is a legal challenge concerning an interpretation of an administrative rule.

*Kisor* enumerated three factors that a court should consider when determining whether a court should defer to an agency's interpretation of their regulations. *Id*. 2415-2418. First, *Kisor* held that when interpreting an administrative agency's rules, a court should defer to the agency's interpretation of their rules *only if* a regulation is genuinely ambiguous. *Id*. at 2414 (emphasis

added). Second, even if a regulation is genuinely ambiguous, an agency's interpretation of the regulation must be reasonable. *Id*. at 2415. Third, even if an agency's reading of a genuinely ambiguous rule is reasonable, "a court must make an independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight." *Id*. at 2415-2416. The aforementioned methodology is incorporated into a courts determination of whether to defer to the Federal Sentencing Commission's commentary notes for the sentencing guidelines by *Stinson v. United States*, 508 U.S. 36, 45 (1993). There, like in *Auer* the Court held that the sentencing guideline commentary is authoritative unless it "is inconsistent with, or a plainly erroneous reading of, that guideline." *Id*.

### A. Under *Kisor*, Mr. White is not a career offender because the plain language of §4B1.2 is unambiguous and does not include inchoate offenses in its definition of controlled substance offenses.

In *Kisor* the Court gave unequivocal instructions for interpreting agency rules stating, "before concluding that a rule is genuinely ambiguous, a court must exhaust all the 'traditional tools' of construction." *Kisor*, 139 S.Ct. at 2415. Accordingly, a court cannot find that a regulation is ambiguous just because it is difficult to comprehend on its first read. *Id*. As Justice Kagan observed in her opinion, "[a]gency regulations can sometimes make the eyes glaze over." *Id*.

This observation is certainly true of the sentencing guideline's definition for controlled substance offenses which states:

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. §4B1.2(b). If a first reading of this guideline subsection results in a glazing of the eyes, one may observe upon a second reading that this subsection does not include inchoate offenses.

The most logical explanation for not including inchoate offenses from §4B1.2(b) is that inchoate drug offenses do not count as controlled substance offenses under the guidelines.

This interpretation is bolstered by viewing subsection §4B1.2(b) in the context of §4B1.2 as a whole. Specifically, §4B1.2(a) which gives the guideline definition for a "crime of violence" includes any offense that "has an element the use, *attempted* use*, or threatened* use of physical force against the person of another[.]" (emphasis added). Readings §4B1.2 as a whole, based on the statutory cannon of construction *expression unius est exclusion alterius*, or the expression of one thing is the exclusion of the other, leads to the conclusion that, the inclusion of inchoate offenses in §4B1.2(a), but not §4B1.2(b), means that they are excluded from §4B1.2(b). This is exactly the type of interpretive analysis that is required by *Kisor* to determine whether a regulation is ambiguous, before a Court may apply *Auer* deference.

**B. Even if §4B1.2 is ambiguous, application note 1's inclusion of inchoate crimes should not control because it is outside the bounds of reasonable interpretation after applying statutory analysis required by *Kisor*.**

*Kisor* further instructs that if a regulation is ambiguous, "the agency's reading must still be 'reasonable.'" *Id*. at 2416. This means the agency's reading "must come within the zone of ambiguity the court has identified after employing all its interpretive tools." *Id*. *Kisor* specifically states that "[t]he text, structure, history, and so forth at least establish the outer bounds of permissible interpretation." *Id*. The opinion next states that some courts have erroneously thought "that at this stage of the analysis, agency constructions of their rules receive greater deference than agency construction of statutes." *Id*.

Application of *expressio unius est exclusion alterius* to §4B1.2 indicates that the permissible "zone of ambiguity" which this Court may defer to the application notes is limited to interpretations of offenses specifically enumerated in §4B1.2(b). For example, an application note

explaining that, "export" as enumerated in §4B1.2(b), means to sell drugs internationally, would be a reasonable interpretation. In contrast, application note 1 would fall outside of the "zone of ambiguity" because it is not interpreting any of the enumerated offenses defined as controlled substance offenses but is rather adding a substantive offense to §4B1.2(b).

There are three purposes of the commentary enumerated in sentencing guideline §1B1.7. The first purpose is to interpret the guideline or explain how it is to be applied. The second purpose is to suggest circumstances which may warrant departure from the guidelines. The third is to provide background information, including factors considered in promulgating the guideline or reasons underlying promulgation of the guideline. None of these purposes indicate that the commentary may add a substantive offense that is excluded from a guideline. U.S.S.G. §1B1.7.

**C. Even if application note 1 is a reasonable interpretation of an ambiguous rule, it is not entitled to controlling weight because it does not reflect the Sentencing Commission's substantive expertise, or a fair and considered judgment.**

*Kisor* requires that "a court must conduct an independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight" before giving the agency's interpretation *Auer* deference. *Id*. The *Kisor* Court recognized that this inquiry cannot be "reduce[d] to any exhaustive test" but did lay out three factors for identifying when *Auer* deference is and is not appropriate. *Id*.

First, the regulatory interpretation must be one made by the agency, or the agency's "authoritative" or "official position," rather than any more ad hoc statement not reflecting the agency's views. *Id*. "Next, the agency's interpretation must in some way implicate its substantive expertise." *Id*. at 2417. "Finally, an agency's reading of a rule must reflect 'fair and considered judgment' to receive *Auer* deference."

Here, there is there is no reason to infer that the inclusion of inchoate offenses for controlled substance offenses per application note 1 invokes the sentencing commissions substantive expertise because increased sentences for drug offenders have little effect on drug crime in general. This argument is substantiated by the Sentencing Commission themselves in their Fifteen Year Report, which noted that, while incapacitation of violent offenders can protect the public from additional violent crimes, "criminologists and law enforcement officials testifying before the Commission have noted that retail-level drug traffickers are readily replaced by new drug sellers so long as the demand for a drug remains high." U.S. Sentencing Comm'n, *Fifteen Years of Guidelines Sentencing, An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 134 (2004). Based on this observation, the interpretation informed by the commissions' substantive expertise would be the plain language interpretation found in §4B1.2(b).

Furthermore, there is nothing to indicate that the Sentencing Commission's commentary is informed by a "fair and considered judgment." The process for amending the actual sentencing guidelines is subject a formal process which includes bipartisan scrutiny of proposed amendments.[1] This kind of process is what *Kisor* had in mind when instructing courts to review agency interpretations of their rules to determine that their interpretation was a "fair and considered judgment." In contrast to the process by which the actual guidelines are amended, there is very little information available regarding the process by which the Sentencing Commission writes their commentary. The most logical inference for this lack of procedural transparency is that the commentary is written in an informal, discretionary manner which would directly cut against the fair and considered judgment agency's' interpretations of their rules are subject to by *Kisor*.

---

[1] *See Amendment Process*, United States Sentencing Commission, July 18, 2022, at https://www.ussc.gov/amendment-process.

**D. This Court should overturn their precedent interpreting guideline §4B1.2(b) to include inchoate crimes because this precedent fails to apply *Kisor's* interpretive methodology.**

The *Kisor* Court noted that the formulation of the test for *Auer* deference– "whether an agency's construction is 'plainly erroneous or inconsistent with the regulation'–may suggest a caricature of the doctrine, *in which deference is reflexive*." *Kisor*, 139 S.Ct. at 2415. (emphasis added).

Even before *Kisor*, appellate courts began to identify this long overlooked reflexive deference. *See United States v. Winstead*, 890 F.3d 1082 (D.C. Cir. 2018) (holding that the commentary in application note 1 adds a crime because U.S.S.G. 4B1.2(b) "presented a very detailed definition of controlled substance offense that clearly excludes inchoate offenses"), *See also United States v. Havis*, 927 F.3d (6th Cir. 2019) (holding that the Commission did not interpret a term in the guideline itself in note 1 because no term in 4B1.2(b) would bear a construction including inchoate offenses).

Moreover, even when appellate courts began to incorporate *Kisor* into their interpretation of § 4B1.2(b) they often noted that their earlier precedent interpreting *Stinson* which incorporated the reflexive deferential understanding of *Auer* was erroneous. *See United States v. Nasir*, 17 F.4th 459, 470-471 (3rd Cir. 2021) (acknowledging that "we may have gone to far in affording deference to the guidelines' commentary under the standard set forth in *Stinson*").

In *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022) the Fourth Circuit held that inchoate offenses are not controlled substance offenses because guideline § 4B1.2(b) "contains a lengthy definition of a 'controlled substance offense' that does not mention attempt offenses" meaning inchoate offenses are not included. The Fourth Circuit began by noting that even under *Stinson* the language in application note 1 was inconsistent with § 4B1.2(b) and thus was not

controlling. *Id*. 443-445. The Fourth Circuit did acknowledge that even if application note 1 and §4B1.2 were not inconsistent, they needed to apply the methodology required by *Kisor* in determining whether the commission's interpretation of §4B1.2(b) in application note 1 controlled. *Id*. at 445. The Fourth Circuit applied the interpretive cannon of *expressio unius exclusion alterius* discussed in section A. *Id*. The Fourth Circuit thus disposed of the case by vacating the defendant's sentence and remanding the case back to the district court for resentencing without career offender status. *Id*. at 449.

*United States v. Smith*, 989 F.3d 575 (7th Cir. 2021) is inapposite because it does not apply *Kisor's* methodology in interpreting §4B1.2 before deferring to the application notes. In *Smith* this Court proceeded by discussing the emerging split as to whether application note 1 to §4B1.2 is controlling. This Court disposed of the alternative arguments by stating "[o]ur court's precedent holds otherwise, and we see no reasons to diverge from it." *Id*. at 585. In doing so this Court moved past the plain language of guideline §4B1.2 and to application note 1 to hold that note 1 includes inchoate offenses.

This Court should overturn its precedent in *Smith* because *Smith* does not acknowledge *Kisor* even once, let alone discuss its methodology, before turning to the application notes. This Circuit would be well within their right to ignore the emerging circuit split and instead rely on their own precedent in the absence of *Kisor*. However, while this Court is bound by their precedent, they are more importantly bound by Supreme Court precedent. The Supreme Court was unequivocal in their instruction to exhaust all tools of statutory construction before deferring to the application notes. This Court's decision in *Smith* is in direct conflict with *Kisor's* directive to "exhaust all tools of construction" before deferring to application notes. It would be prudent for

this Court to bring themselves into line with Supreme Court precedent by holding that relevant tools of statutory construction require the exclusion of inchoate offenses from guideline §4B1.2(b)

## CONCLUSION

For the reasons set forth above, the Appellant, Keith White, prays that this Court vacate his designation as a career offender by the district court and remand this case for resentencing.

<u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Circuit Rule 32 because this brief

    contains 3, 449 words, including footnotes and excluding the parts of the brief exempted

    by Fed. R. App. P. 32(a)(7)(B). This brief also does not exceed 30 pages.

2.  This brief complies with the typeface and type style requirements of Fed. R. App. P.

    32(a)(5) as modified by Circuit Rule 32(b), and Fed. R. App. P. 32(a)(6), because this brief

    has been prepared in a proportionally spaced typeface in 12-point Times New Roman font

    using Microsoft Office Word 365.


/s/ Terry Tolliver
Terry Tolliver, #22556-49
BRATTAIN MINNIX TOLLIVER
One Indiana Square, Suite #2625
Indianapolis, Indiana 46204
(317) 231-1750
(317) 231-1760 fax
Terry@BMGIndy.com
Attorney for Defendant-Appellant,
Keith White

**Certificate of Service**

I, Terry Tolliver, an attorney, certify that on July 18, 2022, I electronically filed the foregoing ***Opening Brief and Required Short Appendix of Appellant Keith White*** with the Clerk of this Court using the CM/ECF System, which will send a notification of electronic filing to all counsel of record who are registered CM/ECF users.

/s/ Terry Tolliver
Terry Tolliver, #22556-49
BRATTAIN MINNIX TOLLIVER
One Indiana Square, Suite #2625
Indianapolis, Indiana 46204
(317) 231-1750
(317) 231-1760 fax
Terry@BMGIndy.com
Attorney for Defendant-Appellant,
Keith White

# SHORT APPENDIX

Circuit Rule 30(d) Statement

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rules 30(a) and (b) are included in the appendix.

Dated: July 18, 2022

/s/ Terry Tolliver
Terry Tolliver, #22556-49
BRATTAIN MINNIX TOLLIVER
One Indiana Square, Suite #2625
Indianapolis, Indiana 46204
(317) 231-1750
(317) 231-1760 fax
Terry @BMGIndy.com
Attorney for Defendant-Appellant,
Keith White

## TABLE OF CONTENTS OF SHORT APPENDIX

Page

Amended Judgment in a Criminal Case [Trial Court, Dkt. No. 218] ..............................SA001

Amended Statement of Reasons [Trial Court, Dkt. No. 219]......................................SA007

Transcript: Selected Portion from Resentencing Hearing (May 16, 2022)..........................SA011

## APPENDIX CERTIFICATION

Undersigned counsel hereby certifies that this Appendix includes all material required by Circuit Rule 30(a) and (b).

/s/ Terry Tolliver
Terry Tolliver

AO 245C (Rev. 09/19) Amended Judgment in a Criminal Case    *items identified with an asterisk denotes changes

# UNITED STATES DISTRICT COURT
Southern District of Indiana

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br><br>KEITH WHITE*<br>a/k/a "Beefy"*<br><br>**Date of Original Judgment: 02/05/2019**<br>**(Or Date of Last Amended Judgment)** | **AMENDED JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number: 1:17CR00135-001<br>USM Number: 15908-028<br><br>Terry Toliver*<br>_____<br>Defendant's Attorney |

**THE DEFENDANT:**

☒ pleaded guilty to count(s) 1

☐ pleaded nolo contendere to count(s) which was accepted by the court.

☐ was found guilty on count(s) after a plea of not guilty

The defendant is adjudicated guilty of these offense(s):

| **Title & Section** | **Nature of Offense** | **Offense Ended** | **Count** |
|---|---|---|---|
| 21 U.S.C §§ 841(a)(1) and 846* | Conspiracy to Possess with the Intent to Distribute and/or Distribute 100 grams or more of a Substance Containing a Detectable Amount of Heroin, a Schedule I Controlled Substance | 08/31/2015 | 1 |

The defendant is sentenced as provided in pages 2 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) dismissed on the motion of the United States.

**IT IS ORDERED** that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of any material change in the defendant's economic circumstances.

5/16/2022
_____
Date of Imposition of Sentence:

*Sarah Evans Barker*
_____
Hon. Sarah Evans Barker, Judge
United States District Court
Southern District of Indiana

5/25/2022
_____
Date

A CERTIFIED TRUE COPY
Roger A.G. Sharpe, Clerk
U.S. District Court
Southern District of Indiana

By *Lana Harves*
_____
Deputy Clerk

SA001

Case 1:17-cr-00135-SEB-TAB   Document 218   Filed 05/25/22   Page 2 of 6 PageID #: 936
Case: 22-2014       Document: 6       Filed: 07/18/2022       Pages: 50
AO 245C (Rev. 09/19) Amended Judgment in a Criminal Case   *items identified with an asterisk denotes changes       Judgment Page 2 of 6

DEFENDANT: Keith White a/k/a "Beefy" *
CASE NUMBER: 1:17CR00135-001

## IMPRISONMENT*

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 120 months. *

☒The Court makes the following recommendations to the Bureau of Prisons: The Court recommends the defendant participate in substance abuse treatment to include RDAP and mental health counseling. *

☒The defendant is remanded to the custody of the United States Marshal.

☐The defendant shall surrender to the United States Marshal for this district:

    ☐ at

    ☐ as notified by the United States Marshal.

☐The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant was delivered on _____ to _____
at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

BY: _____
DEPUTY UNITED STATES MARSHAL

AO 245C (Rev. 09/19) Amended Judgment in a Criminal Case      *items identified with an asterisk denotes changes      Judgment Page 3 of 6

DEFENDANT: Keith White a/k/a "Beefy" *
CASE NUMBER: 1:17CR00135-001

## SUPERVISED RELEASE*

Upon release from imprisonment, the defendant shall be on supervised release for a term of 4 years. *

## MANDATORY CONDITIONS

1.  You shall not commit another federal, state, or local crime.
2.  You shall not unlawfully possess a controlled substance.
3.  You shall refrain from any unlawful use of a controlled substance. You shall submit to one drug test within 15 days of release from imprisonment and at least two periodic least two periodic drug tests thereafter, as determined by the court.
    ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.  ☐ You shall make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.  ☒ You shall cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.  ☐ You shall comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location      where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.  ☐ You shall participate in an approved program for domestic violence. *(check if applicable)*

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant shall comply with the conditions listed below.

## CONDITIONS OF SUPERVISION*

1.  You shall report to the probation office in the federal judicial district to which you are released within 72 hours of release from the custody of the Bureau of Prisons.

2.  You shall report to the probation officer in a manner and frequency directed by the court or probation officer.

3.  You shall permit a probation officer to visit you at a reasonable time at home or another place where the officer may legitimately enter by right or consent, and shall permit confiscation of any contraband observed in plain view of the probation officer.

4.  You shall not knowingly leave the judicial district without the permission of the Court or probation officer. *

5.  You shall answer truthfully the inquiries by the probation officer, subject to your 5th Amendment privilege

6.  You shall not meet, communicate, or otherwise interact with a person you know to be engaged, or planning to be engaged, in criminal activity. You shall report any contact with persons you know to be convicted felons to your probation officer within 72 hours of the contact.

7.  You shall reside at a location approved by the probation officer and shall notify the probation officer at least 72 hours prior to any planned change in place or circumstances of residence or employment (including, but not limited to, changes in who lives there, job positions, job responsibilities). When prior notification is not possible, you shall notify the probation officer within 72 hours of the change.

8.  You shall not own, possess, or have access to a firearm, ammunition, destructive device or dangerous weapon.

Case 1:17-cr-00135-SEB-TAB   Document 218   Filed 05/25/22   Page 4 of 6 PageID #: 938
Case: 22-2014      Document: 6      Filed: 07/18/2022      Pages: 50
AO 245C (Rev. 09/19) Amended Judgment in a Criminal Case   *items identified with an asterisk denotes changes      Judgment Page 4 of 6

DEFENDANT: Keith White a/k/a "Beefy" *
CASE NUMBER: 1:17CR00135-001

9.   You shall notify the probation officer within 72 hours of being arrested, charged, or questioned by a law enforcement officer.

10.  You shall maintain lawful full time employment, unless excused by the probation officer for schooling, vocational training, or other reasons that prevent lawful employment.

11.  You shall make a good faith effort to follow instructions of the probation officer necessary to ensure compliance with the conditions of supervision.

12.  You shall participate in a substance abuse or alcohol treatment program approved by the probation officer and abide by the rules and regulations of that program. The probation officer shall supervise your participation in the program (provider, location, modality, duration, intensity, etc.). The court authorizes the release of the presentence report and available evaluations to the treatment provider, as approved by the probation officer.

13.  You shall not use or possess any controlled substances prohibited by applicable state or federal law, unless authorized to do so by a valid prescription from a licensed medical practitioner. You shall follow the prescription instructions regarding frequency and dosage.

14.  You shall submit to substance abuse testing to determine if you have used a prohibited substance or to determine compliance with substance abuse treatment. Testing may include no more than 8 drug tests per month. You shall not attempt to obstruct or tamper with the testing methods.

15.  You shall not use or possess alcohol.

16.  You shall not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances (e.g., synthetic marijuana, bath salts, Spice, glue, etc.) that impair a person's physical or mental functioning, whether or not intended for human consumption.

17.  You shall submit to the search by the probation officer of your person, vehicle, office/business, residence, and property, including any computer systems and hardware or software systems, electronic devices, telephones, and Internet-enabled devices, including the data contained in any such items, whenever the probation officer has a reasonable suspicion that a condition of supervision or other unlawful conduct may have occurred or be underway involving you and that the area(s) to be searched may contain evidence of such violation or conduct. Other law enforcement may assist as necessary.  You shall submit to the seizure of contraband found by the probation officer.  You shall warn other occupants these locations may be subject to searches.

I understand that I and/or the probation officer may petition the Court to modify these conditions, and the final decision to modify these terms lies with the Court.  If I believe these conditions are being enforced unreasonably, I may petition the Court for relief or clarification; however, I shall comply with the directions of my probation officer unless or until the Court directs otherwise.  Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the condition of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.


(Signed)   _____          _____
           Defendant                                          Date


           _____          _____
           U.S. Probation Officer/Designated Witness          Date

SA004

AO 245C (Rev. 09/19) Amended Judgment in a Criminal Case    *items identified with an asterisk denotes changes        Judgment Page 5 of 6

DEFENDANT: Keith White a/k/a "Beefy" *
CASE NUMBER: 1:17CR00135-001

## CRIMINAL MONETARY PENALTIES

      The defendant must pay the total criminal monetary penalties in accordance with the schedule of payments set forth in this judgment.

| | **Assessment** | **Restitution** | **Fine** | **AVAA Assessment*** | **JVTA Assessment**** |
|---|---|---|---|---|---|
| **TOTALS** | $100.00 (Paid) | | | | |

☐ The determination of restitution is deferred until . An *Amended Judgment in a Criminal Case (AO245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

      If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss**** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **Totals** | | | |

☐ Restitution amount ordered pursuant to plea agreement $

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the ☐ fine ☐ restitution

    ☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245C (Rev. 09/19) Amended Judgment in a Criminal Case   *items identified with an asterisk denotes changes      Judgment Page 6 of 6

DEFENDANT: Keith White a/k/a "Beefy" *
CASE NUMBER: 1:17CR00135-001

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☐ Lump sum payment of $ _____ due immediately, balance due
       ☐ not later than _____ , or
       ☐ in accordance with     ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☒ Payment to begin immediately (may be combined with ☐ C, ☐ D, ☐ F or ☐ G below); or

**C** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐ If this case involves other defendants, each may be held jointly and severally liable for payment of all or part of the restitution ordered herein and the Court may order such payment in the future. The victims' recovery is limited to the amount of loss, and the defendant's liability for restitution ceases if and when the victims receive full restitution.

**G** ☐ Special instructions regarding the payment of criminal monetary penalties:


Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐     Joint and Several

| Defendant and Co-Defendant Names and Case Numbers *(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee |
|---|---|---|---|
| | | | |

☐     The defendant shall pay the cost of prosecution.

☐     The defendant shall pay the following court cost(s): _____

☐     The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

AO 245 SOR    (Rev. 09/15) Judgment in a Criminal Case
Attachment (Page 1) — Statement of Reasons

| DEFENDANT: | Keith White, a/k/a "Beefy"* |
| CASE NUMBER: | 1:17CR00135-001 |
| DISTRICT: | Indiana Southern |

# AMENDED STATEMENT OF REASONS*

(Not for Public Disclosure)

*Sections I, II, III, IV, and VII of the Statement of Reasons form must be completed in all felony and Class A misdemeanor cases.*

## I.    COURT FINDINGS ON PRESENTENCE INVESTIGATION REPORT

A.  ☒  **The court adopts the presentence investigation report without change.**

B.  ☐  **The court adopts the presentence investigation report with the following changes:** *(Use Section VIII if necessary)*
*(Check all that apply and specify court determination, findings, or comments, referencing paragraph numbers in the presentence report)*

   1.  ☐  **Chapter Two of the United States Sentencing Commission** <u>Guidelines Manual</u> determinations by court: *(briefly summarize the changes, including changes to base offense level, or specific offense characteristics)*

   2.  ☐  **Chapter Three of the United States Sentencing Commission** <u>Guidelines Manual</u> determinations by court: *(briefly summarize the changes, including changes to victim-related adjustments, role in the offense, obstruction of justice, multiple counts, or acceptance of responsibility)*

   3.  ☐  **Chapter Four of the United States Sentencing Commission** <u>Guidelines Manual</u> determinations by court: *(briefly summarize the changes, including changes to criminal history category or scores, career offender status, or criminal livelihood determinations)*

   4.  ☐  **Additional Comments or Findings:** *(include comments or factual findings concerning any information in the presentence report, including information that the Federal Bureau of Prisons may rely on when it makes inmate classification, designation, or programming decisions; any other rulings on disputed portions of the presentence investigation report; identification of those portions of the report in dispute but for which a court determination is unnecessary because the matter will not affect sentencing or the court will not consider it)*

C.  ☐  **The record establishes no need for a presentence investigation report pursuant to Fed.R.Crim.P. 32.**
Applicable Sentencing Guideline: *(if more than one guideline applies, list the guideline producing the highest offense level)* _____

## II.    COURT FINDINGS ON MANDATORY MINIMUM SENTENCE *(Check all that apply)*

A.  ☒  One or more counts of conviction carry a mandatory minimum term of imprisonment and the sentence imposed is at or above the applicable mandatory minimum term.

B.  ☐  One or more counts of conviction carry a mandatory minimum term of imprisonment, but the sentence imposed is below the mandatory minimum term because the court has determined that the mandatory minimum term does not apply based on:

   ☐  findings of fact in this case: *(Specify)* _____

   _____

   ☐  substantial assistance *(18 U.S.C. § 3553(e))*
   ☐  the statutory safety valve *(18 U.S.C. § 3553(f))*

C.  ☐  No count of conviction carries a mandatory minimum sentence.

## III.    COURT DETERMINATION OF GUIDELINE RANGE: *(BEFORE DEPARTURES OR VARIANCES)*

Total Offense Level:    31* _____
Criminal History Category:    VI _____
Guideline Range: *(after application of §5G1.1 and §5G1.2)* _____ 188* ____ to ____ 235* ____ months
Supervised Release Range: _____ 4* ____ to ____ 5* ____ years
Fine Range: $ _15,000.00*_ to $ _5,000,000.00*_

☒  Fine waived or below the guideline range because of inability to pay.

AO 245 SOR      (Rev. 09/19) Judgment in a Criminal Case
                Attachment (Page 2) — Statement of Reasons                    Not for Public Disclosure

| | |
|---|---|
| DEFENDANT: | Keith White, a/k/a "Beefy"* |
| CASE NUMBER: | 1:17CR00135-001 |
| DISTRICT: | Indiana Southern |

# AMENDED STATEMENT OF REASONS

## IV.   GUIDELINE SENTENCING DETERMINATION *(Check all that apply)*

A. ☐ The sentence is within the guideline range and the difference between the maximum and minimum of the guideline range does not exceed 24 months.

B. ☐ The sentence is within the guideline range and the difference between the maximum and minimum of the guideline range exceeds 24 months, and the specific sentence is imposed for these reasons: *(Use Section VIII if necessary)* .

C. ☐ The court departs from the guideline range for one or more reasons provided in the Guidelines Manual.
   *(Also complete Section V)*

D. ☒ The court imposed a sentence otherwise outside the sentencing guideline system *(i.e., a variance).* *(Also complete Section VI)*

## V.   DEPARTURES PURSUANT TO THE GUIDELINES MANUAL *(If applicable)*

A. **The sentence imposed departs:** *(Check only one)*
   ☐ above the guideline range
   ☐ below the guideline range

B. **Motion for departure before the court pursuant to:** *(Check all that apply and specify reason(s) in sections C and D)*
   1. **Plea Agreement**
      ☐ binding plea agreement for departure accepted by the court
      ☐ plea agreement for departure, which the court finds to be reasonable
      ☐ plea agreement that states that the government will not oppose a defense departure motion
   2. **Motion Not Addressed in a Plea Agreement**
      ☐ government motion for departure
      ☐ defense motion for departure to which the government did not object
      ☐ defense motion for departure to which the government objected
      ☐ joint motion by both parties
   3. **Other**
      ☐ Other than a plea agreement or motion by the parties for departure

C. **Reasons for departure:** *(Check all that apply)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ | 4A1.3 | Criminal History Inadequacy | ☐ | 5K2.1 | Death | ☐ | 5K2.12 Coercion and Duress |
| ☐ | 5H1.1 | Age | ☐ | 5K2.2 | Physical Injury | ☐ | 5K2.13 Diminished Capacity |
| ☐ | 5H1.2 | Education and Vocational Skills | ☐ | 5K2.3 | Extreme Psychological Injury | ☐ | 5K2.14 Public Welfare |
| ☐ | 5H1.3 | Mental and Emotional Condition | ☐ | 5K2.4 | Abduction or Unlawful Restraint | ☐ | 5K2.16 Voluntary Disclosure of Offense |
| ☐ | 5H1.4 | Physical Condition | ☐ | 5K2.5 | Property Damage or Loss | ☐ | 5K2.17 High-Capacity Semiautomatic Weapon |
| ☐ | 5H1.5 | Employment Record | ☐ | 5K2.6 | Weapon | ☐ | 5K2.18 Violent Street Gang |
| ☐ | 5H1.6 | Family Ties and Responsibilities | ☐ | 5K2.7 | Disruption of Government Function | ☐ | 5K2.20 Aberrant Behavior |
| ☐ | 5H1.11 | Military Service | ☐ | 5K2.8 | Extreme Conduct | ☐ | 5K2.21 Dismissed and Uncharged Conduct |
| ☐ | 5H1.11 | Charitable Service/Good Works | ☐ | 5K2.9 | Criminal Purpose | ☐ | 5K2.22 Sex Offender Characteristics |
| ☐ | 5K1.1 | Substantial Assistance | ☐ | 5K2.10 | Victim's Conduct | ☐ | 5K2.23 Discharged Terms of Imprisonment |
| ☐ | 5K2.0 | Aggravating/Mitigating Circumstances | ☐ | 5K2.11 | Lesser Harm | ☐ | 5K2.24 Unauthorized Insignia |
| | | | | | | ☐ | 5K3.1 Early Disposition Program (EDP) |

☐ Other Guideline Reason(s) for Departure, to include departures pursuant to the commentary in the Guidelines Manual: *(see "List of Departure Provisions" following the Index in the Guidelines Manual.) (Please specify)*

D. **State the basis for the departure.** *(Use Section VIII if necessary)*

SA008

AO 245 SOR   (Rev. 09/19) Judgment in a Criminal Case
Attachment (Page 3) — Statement of Reasons                                          Not for Public Disclosure

| | |
|---|---|
| DEFENDANT: | Keith White, a/k/a "Beefy"* |
| CASE NUMBER: | 1:17CR00135-001 |
| DISTRICT: | Indiana Southern |

# AMENDED STATEMENT OF REASONS

**VI.    COURT DETERMINATION FOR A VARIANCE** *(If applicable)*

    **A.    The sentence imposed is:** *(Check only one)*
- ☐ above the guideline range
- ☒ below the guideline range

    **B.    Motion for a variance before the court pursuant to:** *(Check all that apply and specify reason(s) in sections C and D)*
      1. **Plea Agreement**
- ☐ binding plea agreement for a variance accepted by the court
- ☐ plea agreement for a variance, which the court finds to be reasonable
- ☐ plea agreement that states that the government will not oppose a defense motion for a variance

      2. **Motion Not Addressed in a Plea Agreement**
- ☐ government motion for a variance
- ☐ defense motion for a variance to which the government did not object
- ☒ defense motion for a variance to which the government objected
- ☐ joint motion by both parties

      3. **Other**
- ☐ Other than a plea agreement or motion by the parties for a variance

    **C.    18 U.S.C. § 3553(a) and other reason(s) for a variance** *(Check all that apply)*
- ☒ The nature and circumstances of the offense pursuant to 18 U.S.C. § 3553(a)(1):

| | | |
|---|---|---|
| ☐ Mens Rea | ☒ Extreme Conduct | ☐ Dismissed/Uncharged Conduct |
| ☐ Role in the Offense | ☐ Victim Impact | |
| ☐ General Aggravating or Mitigating Factors: *(Specify)* | | |

- ☒ The history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1):

| | |
|---|---|
| ☐ Aberrant Behavior | ☒ Lack of Youthful Guidance |
| ☐ Age | ☐ Mental and Emotional Condition |
| ☐ Charitable Service/Good Works | ☐ Military Service |
| ☐ Community Ties | ☐ Non-Violent Offender |
| ☐ Diminished Capacity | ☐ Physical Condition |
| ☒ Drug or Alcohol Dependence | ☐ Pre-sentence Rehabilitation |
| ☐ Employment Record | ☐ Remorse/Lack of Remorse |
| ☐ Family Ties and Responsibilities | ☐ Other: *(Specify)* |

    ☐ Issues with Criminal History: *(Specify)*

- ☐ To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense *(18 U.S.C. § 3553(a)(2)(A))*
- ☒ To afford adequate deterrence to criminal conduct *(18 U.S.C. § 3553(a)(2)(B))*
- ☐ To protect the public from further crimes of the defendant *(18 U.S.C. § 3553(a)(2)(C))*
- ☐ To provide the defendant with needed educational or vocational training *(18 U.S.C. § 3553(a)(2)(D))*
- ☐ To provide the defendant with medical care *(18 U.S.C. § 3553(a)(2)(D))*
- ☐ To provide the defendant with other correctional treatment in the most effective manner *(18 U.S.C. § 3553(a)(2)(D))*
- ☐ To avoid unwarranted sentencing disparities among defendants (18 U.S.C. § 3553(a)(6)) *(Specify in section D)*
- ☐ To provide restitution to any victims of the offense *(18 U.S.C. § 3553(a)(7))*

| | | |
|---|---|---|
| ☐ Acceptance of Responsibility | ☐ Conduct Pre-trial/On Bond | ☐ Cooperation Without Government Motion for Departure |
| ☐ Early Plea Agreement | ☐ Global Plea Agreement | |
| ☐ Time Served *(not counted in sentence)* | ☐ Waiver of Indictment | ☐ Waiver of Appeal |
| ☐ Policy Disagreement with the Guidelines (*Kimbrough v. U.S.*, 552 U.S. 85 (2007): *(Specify)* | | |

- ☒ Other: All defendants that qualify for the career offender automatically fall into category VI criminal history. The guidelines do not take into account the defendant also used drugs. The enhancement may be overstated.

    **D.    State the basis for a variance.** *(Use Section VIII if necessary)*

AO 245 SOR    (Rev. 09/19) Judgment in a Criminal Case
Attachment (Page 4) — Statement of Reasons    Not for Public Disclosure

DEFENDANT:        Keith White, a/k/a "Beefy"*
CASE NUMBER:      1:17CR00135-001
DISTRICT:         Indiana Southern

# AMENDED STATEMENT OF REASONS*

## VII.   COURT DETERMINATIONS OF RESTITUTION

A. ☒ **Restitution not applicable.**

B. **Total amount of restitution:** $ _____

C. **Restitution not ordered:** *(Check only one)*

1. ☐ For offenses for which restitution is otherwise mandatory under 18 USC. § 3663A, restitution is not ordered because the number of identifiable victims is so large as to make restitution impracticable under 18 U.S.C. § 3663A(c)(3)(A).

2. ☐ For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because determining complex issues of fact and relating them to the cause or amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim would be outweighed by the burden on the sentencing process under 18 U.S.C. § 3663A(c)(3)(B).

3. ☐ For other offenses for which restitution is authorized under 18 U.S.C. § 3663 and/or required by the sentencing guidelines, restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweigh the need to provide restitution to any victims under 18 U.S.C. § 3663(a)(1)(B)(ii).

4. ☐ For offenses for which restitution is otherwise mandatory under 18 U.S.C. §§ 1593, 2248, 2259, 2264, 2327 or 3663A, restitution is not ordered because the victim(s)'(s) losses were not ascertainable (18 U.S.C. § 3664(d)(5)).

5. ☐ For offenses for which restitution is otherwise mandatory under 18 U.S.C. §§ 1593, 2248, 2259, 2264, 2327 or 3663A, restitution is not ordered because the victim(s) elected to not participate in any phase of determining the restitution order (18 U.S.C. § 3664(g)(1)).

6. ☐ Restitution is not ordered for other reasons: *(Explain)*

D. ☐ **Partial restitution is ordered for these reasons:** *(18 U.S.C. § 3553(c))*

## VIII.   ADDITIONAL BASIS FOR THE SENTENCE IN THIS CASE *(If applicable)*

Defendant's Soc. Sec. No.:    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

Defendant's Date of Birth:    September 21, 1982

Defendant's Residence
Address:          Clark County Jail *
                  501 East Court Avenue
                  Jeffersonville, Indiana 47130

Defendant's Mailing
Address:          Clark County Jail *
                  501 East Court Avenue
                  Jeffersonville, Indiana 47130

Date of Imposition of Judgment:    5/16/2022

*Sarah Evans Barker*

Signature of Judge

Hon. Sarah Evans Barker, Judge
United States District Court
Southern District of Indiana
Name and Title of Judge

Date:    5/25/2022

**A CERTIFIED TRUE COPY**
**Roger A.G. Sharpe, Clerk**
U.S. District Court
Southern District of Indiana

By _____
    Deputy Clerk

SA010

1  in paragraph 27.

2          So I'll hear your argument.  I've read your

3  memorandum, but would you like to distill your argument today,

4  Mr. Tolliver?

5          MR. TOLLIVER:  I would, Your Honor.

6          THE COURT:  I'll hear you now.

7          MR. TOLLIVER:  Thank you, Your Honor.

8          Your Honor, as the Court noted at the beginning, this

9  Court is familiar with Mr. White.  He's been in federal custody

10  since August 17th, 2017, but that's not the whole story.

11          Mr. White spent most of his life in jail or in prison,

12  but the man standing before you today is not the same person

13  you've read about in the documents before you, nor is he the

14  same person that you saw just a couple years ago at sentencing.

15          We're going to show you Mr. White has worked to

16  improve himself and is prepared to make this demonstration to

17  the Court as well as the legal argument under Kisor that he is

18  no longer a career offender.

19          As the Court's aware, a criminal sentence is normally

20  a package that includes several component parts.  And one of

21  the things that the Seventh Circuit has noted is that

22  post-conviction rehabilitation is something that can be

23  considered at resentencing.

24          Here what we want the Court to consider is Kisor.

25  Under the old rules, the Court could look to the commentary in

1    order to expand on the language.  In Kisor, the Supreme Court

2    explained that "A court must carefully consider the texts,

3    structure, history and purpose of a regulation in all the ways

4    it would have if it had no agency to fall back on.  Doing so

5    resolved many ambiguities out of the box without resort to Auer

6    Deference."  I'll certainly ask for better pronunciation from

7    someone else.

8         Here, the Court must exhaust all traditional tools of

9    construction before it looks to deference.

10        THE COURT:  What is the term you want me to construct?

11        MR. TOLLIVER:  The term that we want you to construct

12   is that we look at the notes, and a career -- or a controlled

13   substance is an offense under federal or state law punishable

14   by imprisonment for a term exceeding one year.  That prohibits

15   the manufacture, import/export, distribution or dispensing of a

16   controlled substance or a counterfeit substance or possession

17   of a controlled substance or a counterfeit substance with

18   intent to manufacture --

19        THE COURT:  So is it the term "controlled substance"

20   or --

21        MR. TOLLIVER:  Correct, Your Honor.

22        THE COURT:  -- the definition --

23        MR. TOLLIVER:  I'm sorry.

24        THE COURT:  -- of a controlled substance?  I'm just

25   trying to zero in here on your argument.

1        MR. TOLLIVER:  The definition of a controlled

2   substance.

3        THE COURT:  All right.

4        MR. TOLLIVER:  Our argument is that the definition

5   does not include and show offenses, including conspiracy.  It's

6   only when you go down to the guidelines where you find that

7   conspiracy -- or the commentary to the guidelines where you

8   find conspiracy is mentioned.

9        Under Kisor, it's argued that the court -- the Supreme

10  Court has instructed the court to read the top portion of the

11  definition.  And only if it's confusing or requires additional

12  guidance, then you go down below to the commentary.

13        Here, we don't think you need to do that.  And the

14  reason why is that you just have to go to the next session.

15  The term of crime of violence --

16        THE COURT:  Wait.  Tell me the section you're reading

17  from.

18        MR. TOLLIVER:  The section we started with is 4B1.2B.

19        THE COURT:  Okay, hold on.  Somebody got the 2018

20  manual.

21        I now have 2021.  Tell me again, 4 what?

22        MR. TOLLIVER:  4B1.2B.

23        THE COURT:  4B1.

24        MR. TOLLIVER:  .2B.

25        THE COURT:  Say it again. I didn't follow what you

1    said.

2         MR. TOLLIVER:  I'm sorry, 4B1.2B.

3         THE COURT:  No, it's 4B1.1B2, isn't it?

4         MR. TOLLIVER:  4B1 --

5         THE COURT:  .1B2?  That's what it is in the

6    presentence report.  Maybe Ms. Talley doesn't have it.

7         4B1.2.

8         MR. TOLLIVER:  4B1.2, that definition of terms is used

9    in Section 4B1.1.

10        THE COURT:  So, Ms. Talley, you need to change your

11   presentence report in paragraph 27.

12        PROBATION OFFICER:  No, Your Honor, paragraph 27 is

13   4B1.1B2, but that is simply because the statutory penalties

14   changed to 25 years or more as a maximum sentence, which

15   puts -- which scores the 34, which is under 4B1.1B2.

16   Mr. Tolliver, I believe, is talking about the definition of a

17   controlled substance.

18        THE COURT:  Yes, you're right.  Why would I ever

19   challenge the probation officer.

20        Okay.  I have 4B1.2, and you're talking about which

21   section?

22        MR. TOLLIVER:  The controlled substance definition.

23        THE COURT:  Which is at 4B2?

24        MR. TOLLIVER:  4B1.2B.

25        THE COURT:  Okay.  Yes, I'm with you.

1    MR. TOLLIVER:  In looking at this statute, it stands

2    on its own.  "It's an offense under federal or state law

3    punishable by imprisonment."

4    THE COURT:  Okay, I can read it.

5    MR. TOLLIVER:  Okay.  And you just need to go to the

6    one above it, 4B1.2A.  There, the definition specifically

7    includes controlled crimes.  The term "crime of violence" means

8    any offense that has an element of the use, attempted use or

9    threatened use of physical force against a person of another.

10   This suggests that the Sentencing Commission is well aware of

11   attempt crimes and can include those in the guidelines when it

12   chooses to.

13   THE COURT:  Right, but it didn't.  So aren't we

14   focused just on B?

15   MR. TOLLIVER:  Correct, and that is why we do not

16   believe that the Court needs to go down below to the

17   commentary.

18   THE COURT:  I'm trying to get you to tell me what term

19   is requiring me to look at the commentary.  What is -- what's

20   the ambiguity in B that you want me to focus on?

21   MR. TOLLIVER:  Conspiracy is not included in B.  And

22   that's why Mr. White is considered a career offender based upon

23   conspiracy.

24   THE COURT:  The charge against him in Count 1 was

25   conspiracy to possess with the intent to distribute heroin,

1  right?

2           THE DEFENDANT:  Yes, that was my instance -- that was

3  my --

4           THE COURT:  No, no, not talking to you, sir.

5           THE DEFENDANT:  Oh.  You looked at me.  I'm sorry.

6           THE COURT:  I'm talking to the lawyer.

7           THE DEFENDANT:  You looked at me.  Sorry.

8           THE COURT:  Let me talk to the lawyer and then I'll

9  call on you in a minute.

10          THE DEFENDANT:  All right.

11          THE COURT:  So the fact that conspiracy's not included

12  in a controlled substance offense is your point?

13          MR. TOLLIVER:  Correct, Your Honor.

14          THE COURT:  And that's what pushes you into the

15  application notes?

16          MR. TOLLIVER:  Correct, Your Honor.

17          THE COURT:  All right.  Where in the application

18  notes?

19          MR. TOLLIVER:  The application notes is where it

20  includes -- that is application one, definition, crime of

21  violence and controlled substance offense, include the offenses

22  of aiding and abetting, conspiring and attempting to commit

23  such offenses.

24          And it's our position that the Court doesn't need to

25  go down there because the definition above is clear on its

1    face.  And under Kisor, it's only when it's not clear up here,

2    then you go down to the application notes.

3           THE COURT:  Okay.  I understand your argument.

4    Anything else?  And basically you're saying if I don't read the

5    application note, then I'll say that conspiracy's not included

6    and he shouldn't be included as a career offender?

7           MR. TOLLIVER:  Correct, Your Honor.

8           THE COURT:  Anything else?

9               (Off-the-record discussion.)

10          MR. TOLLIVER:  So the Seventh Circuit has looked at

11   this as well and while it's declined to revisit certain --

12          COURT REPORTER:  I'm sorry?

13          THE COURT:  When you read like that --

14          MR. TOLLIVER:  I'm too fast.

15          THE COURT:  -- you lower your voice and you go too

16   fast.  So I don't hear it and neither does the court reporter.

17   So I'm going to have you stand against the back wall to read it

18   to us pretty soon if you don't slow it down.

19          MR. TOLLIVER:  Your Honor, I apologize.

20          THE COURT:  You were talking about the Seventh

21   Circuit's approach to this issue.

22          MR. TOLLIVER:  Right.  There cannot be a conflict --

23   what Ropp -- Ropp said is there cannot be a conflict because

24   the text of 4B1.2A does not tell us one way or the other

25   whether inchoate offenses are included or excluded, but this

1    does not -- this seems to disregard Kisor's emphasis that

2    deference is the Court's last resort.

3        So our overall argument is that while Seventh Circuit

4    precedent may support the reading of the commentary into the

5    definition, we think under Kisor, only when this Court is

6    confused or unclear from a definition up top does it then go

7    below to the guidelines.

8        And the Court, it, like all other courts, is familiar

9    with how it interprets a regulation.  And based upon the Kisor

10   limitation on deference to administrative agencies, we believe

11   that the Court must focus on the definition as presented and

12   disregard the commentary because it's not necessary.

13       Now, even if --

14   THE COURT:  What's your argument with respect to the

15   fact that 4B1.2B uses a broad, generic phrase "an offense"?

16       In fact, it goes on and says "An offense under federal

17   or state law, punishable by imprisonment for a term exceeding

18   one year."  And doesn't list all of those.  It just gathers

19   them all into this generalized category of an offense.

20       What do you say about that?

21   MR. TOLLIVER:  Then you would go back to statutory

22   construction.  When it's specific versus general, you tend to

23   focus on specific.  Here, it's not a general definition.  It's

24   a specific definition because it includes "that prohibits the

25   manufacture, import, export, distribution and dispensing of a

1  controlled substance."

2          And perhaps that's how you would get your ambiguity.

3  Again, we had no idea what an offense under federal or state

4  law punishable by imprisonment for a term exceeding one year

5  means, which is probably difficult --

6          THE COURT:  You would weed out of the consideration

7  all the definitional terms in application note one, first

8  paragraph?

9          MR. TOLLIVER:  You would only --

10          THE COURT:  You would weed out "aiding and abetting,

11  conspiring and attempting to commit such offenses"?  You would

12  weed them all out; is that right?

13          MR. TOLLIVER:  We would weed them out because it's not

14  necessary given the definition presented above, yes, Your

15  Honor.

16          THE COURT:  I understand your argument.

17          MR. TOLLIVER:  And based upon that, we do not believe

18  that Mr. White is a career offender.  So what we have here is

19  that the guidelines, as originally presented to this Court,

20  were 34 and criminal history is 6.  262 to 327 months followed

21  by at least eight years of supervised release.

22          We believe that the Court rightly determined that that

23  was overly excessive for Mr. White.  And this Court sentenced

24  him to 144 imprisonment with 144 [sic] supervised release.

25  Here today, the government suggests it's 188 to 235 months and

1    then as we talked about, four to five years of supervised

2    release, category 4, and that's based on 31 and 6.

3            We believe the appropriate range is 100 to 125 months

4    once you eliminate the felony drug offense or the career

5    offender designation, which the drug offense -- the career

6    offender designation, that would remove the four-level

7    enhancement, which will be 47, category four.  We believe that

8    a hundred-month sentence is appropriate because --

9            THE COURT:  Okay, we'll get to the guideline

10   calculation after I resolve the legal issue.  So we have to get

11   there.  So I'll go step by step.  I understand your legal

12   issue.  Let me find out what Mr. Shepard says.

13           MR. TOLLIVER:  Thank you, Your Honor.

14           THE COURT:  Mr. Shepard, what's the government's

15   response?

16           MR. SHEPARD:  Your Honor --

17           THE COURT:  Wait, just a minute.  Mr. Tolliver, I hear

18   you fighting the same cold that I have lately and I have a

19   cough drop up here if you'd like one.

20           MR. TOLLIVER:  That's what I was offered.  I was

21   wondering if I can go up there, if I could have permission.

22           THE COURT:  Yes.

23           Okay, Mr. Shepard?

24           MR. SHEPARD:  Thank you, Your Honor.  I think we start

25   with .1.  There's nothing about 4B1.2B, the term "controlled

1  substance" offense which would indicate that conspiracy is not

2  included.  The only thing that it --

3         THE COURT:  Except that it's not listed there

4  specifically.

5         MR. SHEPARD:  It's not specifically listed, but

6  neither is it precluded.  I think what it states is --

7         THE COURT:  Look at me when you talk so I can

8  understand you.

9         MR. SHEPARD:  I'm sorry, Your Honor.

10         It states that "Any offense under federal or state law

11  punishable by imprisonment exceeding one year that prohibits

12  the manufacture, import, export, distribution or dispensing of

13  controlled substances or possession with intent to manufacture"

14  and so on and so forth.

15         Conspiracy is one of those offenses.  It is an offense

16  by its nature that deals with the manufacture, possession with

17  intent to manufacture, import, export, distribute or dispense.

18  Most importantly, we also go to the premise that the

19  controlling precedent in this circuit is United States versus

20  Smith, which is 989 F.3d 575, Seventh Circuit 2021.  So this is

21  an opinion that was decided in March.  It's only a little over

22  a year old.

23         The Smith court specifically held that a prior

24  conviction for conspiracy to possess with intent to distribute

25  cocaine was a predicate controlled substance offense for the

1  career offender sentencing guideline.  The Smith court was

2  decided after Kisor.  It was aware of Kisor.  It does not rely

3  upon Kisor.  Rather, it relies upon a different Supreme Court

4  opinion, United States versus -- excuse me, Stinson versus

5  United States, 113 Supreme Court 913, decided 1993.

6       While Kisor was a opinion that dealt with -- I believe

7  it was the VA, in interpreting VA regulations, the Stinson

8  court was looking specifically at the Sentencing Commission and

9  the Sentencing Commission's ability to -- it was looking at the

10 commentary.  And what the Stinson court held was so long as the

11 commentary is not contrary to the statutes or the law, the

12 commentary has the controlling force of the law.  That is still

13 good law.  Kisor did not overrule Stinson and only the Supreme

14 Court can overrule itself.

15      The Smith court specifically relied upon Stinson in

16 its decision.  And the Seventh Circuit is not the only one who

17 has taken that approach.  The Fourth Circuit in the Moses

18 opinion, United States versus Moses, 23rd F.4th, 347, 2022,

19 specifically looked at Kisor and Stinson and whether or not

20 Stinson was implicitly overruled by Kisor and the Fourth

21 Circuit held that it is not.

22      Specifically, it is noteworthy that Kisor did not

23 purport to overrule Stinson.  That is Moses at 347.  The Kisor

24 court, considered on its own terms, does not apply to the

25 Sentencing Commission's official commentary in the guidelines

1  manual.  Again, that is Moses at 347.

2       So what we have, Your Honor, is two Supreme Court

3  opinions --

4       THE COURT:  Okay, this is my first notice of your

5  authority.  So maybe I need to look at the Smith case, but I

6  understand from your description of it that these cases address

7  rules of construction and what weight, what use to make of the

8  application notes in the sentencing guidelines.

9       MR. SHEPARD:  That's correct.

10       THE COURT:  Okay.

11       MR. SHEPARD:  And they both indicate that the

12  guidelines had the same force, the commentary has the same

13  force as the guidelines.  And so where we're at, Your Honor, is

14  the controlling law from March 3rd of 2021, which is post-Kisor

15  from the Seventh Circuit is that conspiracy to possess with the

16  intent to distribute is a qualifying offense as a -- is a

17  controlled substance offense under the career offender

18  guideline, this very specific guideline we're talking about,

19  4B1.2 --

20       THE COURT:  So was Smith a drug case?

21       MR. SHEPARD:  Yes, it was, Your Honor.

22       THE COURT:  And it was a decision about whether the

23  Application Note 1 in that first paragraph of definitions gives

24  meaning to the career offender provision 4B1.2B in defining

25  controlled substance offense; is that --

1    MR. SHEPARD:  That is correct, Your Honor.  The

2    specific issue in Smith is the one that is raised right here,

3    which is whether or not inchoate offenses are included as

4    controlled substance offenses and the Smith court held that

5    they are.

6         THE COURT:  Okay.  And that's a final decision?

7    Nobody --

8         MR. SHEPARD:  That is a final decision, Your Honor.

9         THE COURT:  Okay.

10        MR. SHEPARD:  And it relied, as I indicated, upon a

11   previous Supreme Court opinion, which is the Stinson opinion,

12   in reaching its conclusion.  It noted that there is a circuit

13   split on the matter and it chose to follow its own prior

14   precedent and not go along with the other circuits.

15        THE COURT:  The Seventh Circuit did?

16        MR. SHEPARD:  Correct.  And that is the law of the

17   land, and --

18        THE COURT:  Do you remember who --

19        MR. SHEPARD:  I have a copy of it Your Honor --

20        THE COURT:  Do you remember who wrote the Seventh

21   Circuit --

22        MR. SHEPARD:  Judge Brennan.

23        THE COURT:  Okay, good.  All right, thank you.

24        Do you want to respond to the Smith case authority,

25   Mr. Tolliver?

1        MR. TOLLIVER:  Briefly, Your Honor.  We did address

2    this in our memo, but the Smith case -- I think our primary

3    response is that the court should have been aware of Kisor and

4    yet it specifically did not address Kisor in Smith.  And we

5    don't know why it chose not to do that.  And that further

6    results in this discrepancy among the circuits.  And if the

7    Court is wanting to look at additional circuits, we believe

8    that the -- that the case, U.S. versus Nasir, N-A-I-S --

9    N-A-S-I-R, Third Circuit, 18-288, says exactly what we believe

10   it should say, that you don't need to go down to the commentary

11   to review the meaning and the definition when the definition

12   itself --

13        THE COURT:  What's the date of the Third Circuit case?

14        MR. TOLLIVER:  Third Circuit is November 8, 2021.

15        THE COURT:  Does it note the Smith case as holding

16   opposite?

17        MR. TOLLIVER:  This is an en banc decision by the

18   Third Circuit, Your Honor.  We can present this at court.

19        THE COURT:  What's your authority on that?

20        MR. TOLLIVER:  I'm sorry?

21        THE COURT:  Do they reference the contrary view in the

22   Seventh Circuit as reflected in the Smith decision?

23        MR. TOLLIVER:  I don't know that, Your Honor.  I think

24   it relies primarily on Kisor.

25        THE COURT:  Well, they don't have to.  I just was

1    curious.

2         Okay.  So you agree that the Seventh Circuit is not in

3    line with your view, but you're urging that this Court take a

4    better view; is that right?

5         MR. TOLLIVER:  This Court should look to the Supreme

6    Court for the appropriate authority.  And while this Court is

7    certainly bound by the decisions of the Seventh Circuit, it's

8    also bound by the decision of the United States Supreme Court.

9    And based upon that, we believe that our interpretation is the

10   correct one.

11        THE COURT:  Very good.  Thank you, Mr. Tolliver --

12        MR. TOLLIVER:  Thank you.

13        THE COURT:  -- and Mr. Shepard as well for your lucid

14   presentations.  I think I understand it well.

15        I'm going to overrule the objection because of the

16   Smith decision and the Seventh Circuit holding to the contrary.

17   That is the authority that binds this Court.  I would do that

18   even if the Seventh Circuit hadn't ruled in a pretty definitive

19   way in the Smith case because, in my opinion, the words that

20   are used in 4B1.2B in referencing a controlled substance

21   offense and the phrase "an offense," that's in quotes, "an

22   offense" is broad, it's generic.

23        It goes on to list characteristics of the offense that

24   is a controlled substance offense, but it doesn't rule out the

25   inchoate offenses even by the terms of paragraph B.  And the

1    application note very clearly adds important, necessary,

2    helpful articulation of the definition of a controlled

3    substance offense to include the offenses of aiding and

4    abetting, conspiring and attempting to commit such offenses.

5         So this Court will give credence to the -- and

6    controlling application to the application note in defining

7    these offenses to be included into the definition of controlled

8    substance offense.  And I find on the basis of the authorities

9    to which I must yield that relying on this definition in the

10   application note is appropriate and proper and is not -- does

11   not create an ambiguity when considered in light of the

12   language in 4B1.2B.

13        So I'll overrule the objection on that basis.  That

14   means that the career offender enhancement applies and will be

15   part of the guideline calculation and the beginning point of

16   the decision making.

17        Now you have other issues that would ameliorate the

18   apparent harshness of the guideline range that you've also laid

19   out, Mr. Tolliver, in your sentencing memorandum which I found

20   quite helpful.  And so if you want to embellish on those

21   issues, you may do so at this time.

22        MR. TOLLIVER:  Thank you, Your Honor.  Again, as the

23   Court is aware, what we are looking at is a guideline range of

24   188 to 235 months.  This Court has previously found an

25   appropriate sentence for Mr. White is 144 months followed by